Shawnee S. Perdue
JOHNSON & MONTELEONE, L.L.P.
350 North Ninth Street, Suite 500
Boise, Idaho 83702
Telephone: (208) 331-2100
Facsimile: (208) 947-2424
shawnee@treasurevalleylawyers.com
Idaho State Bar No. 8888

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| JAIMEE DYE,<br><br>           Plaintiff,<br><br>v.<br><br>IDAHO STATE POLICE, an Administrative Agency of the State of Idaho, and JOHN/JANE DOES I-V, whose true identities are unknown,<br><br>           Defendants. | **Case No.**<br><br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW, Plaintiff Jaimee Dye, by and through her attorney of record, Shawnee Perdue of the law firm of Johnson & Monteleone, L.L.P., and for causes of action against the above-named Defendants, hereby complains and alleges as follows:

### NATURE OF CLAIMS

1.  Plaintiff seeks redress for the Defendants' conduct in discriminating against her on the basis of sex in violation of Title IX, 20 U.S.C. § 1681, et seq., and under 42 U.S.C. § 1983 for violating her rights under the Equal Protection Clause of the United States Constitution.

**COMPLAINT AND DEMAND FOR JURY TRIAL  -  1**

## PARTIES, JURISDICTION, AND VENUE

2. Ms. Dye is a citizen of the State of Idaho, and is currently residing in Kuna, Idaho. She has been employed by ISP since 2017 as a dispatcher.

3. ISP is an executive department of the State of Idaho, created pursuant to I.C. § 67-2901, which is tasked with, among other things, "enforcing all of penal and regulatory laws of the state [of Idaho]."

4. Idaho Peace Officers Standards and Training ("POST") is a division within ISP, and exists pursuant to I.C. § 19-5102, which established the Idaho peace officers standards and training council "in the Idaho state police."

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

6. Venue is proper with this Court pursuant to 28 U.S.C. § 139l(b), because all of the employment practices alleged to be unlawful were committed within the jurisdiction of this Court.

## FACTUAL ALLEGATIONS

11. Ms. Dye first worked for ISP as a dispatcher from 1998 until 2000.

12. She then went to work for the Twin Falls Police Department, first as a Community Service Officer and then as a dispatcher, from 2000 until 2005.

13. Ms. Dye then became POST certified as a police officer, and was employed by the Meridian Police Department as a police officer from 2005 and 2016.

14. During the period that she worked in law enforcement Ms. Dye earned seven different POST certifications, including the Instructor and Master. The instructor certificate was awarded after Ms. Dye had completed a week long instructor development course and a second course in her area of expertise, received a recommendation from her agency, developed a course curriculum and then successfully taught it to a group of students.

15. The Instructor development program and certificate taught Ms. Dye the very skills she would need to be a successful Training or Curriculum coordinator. The Master Certificate is the highest certificate a law enforcement officer who is not a supervisor can earn in Idaho. In addition, Ms. Dye had been a very successful Field Training Officer who was repeatedly praised for her work.

16. Ms. Dye also attended more than 20 different law enforcement trainings since 2002, including the Idaho POST Instructor Development Course, and has assisted with and/or instructed six different training courses to various law enforcement agencies in Idaho, including two courses at POST.

17. The Idaho POST Instructor Development Course is only opened to applicants with at least three (3) years of law enforcement experience. This course covers topics such as adult learning, building thinking skills in students, assessing student understanding of class materials, and writing lessons plans. These are the direct skills that were required in the Coordinator I position Ms. Dye has applied for but been rejected. In addition, Ms. Dye has been either the primary or secondary instructor on six (6) separate training courses given to various laws enforcement agencies in Idaho, including two courses at POST.

18. Because of an on-the-job injury Ms. Dye was no longer able to work as a police officer and in 2017 she was rehired by ISP as a dispatcher, the position she currently occupies. Throughout her employment with ISP she has received consistently positive performance evaluations.

19. Since April 2017, Ms. Dye has repeatedly applied for the position of Coordinator 1, an entry level position at POST, six (6) different times. Four (4) of these positions were for Training Coordinator I, and two were for Curriculum Coordinator I. She applied for these positions as follows:

      a.       Training Coordinator I - October 2017

      b.       Curriculum Coordinator I - February 2018

      c.       Training Coordinator I - September 2018

      d.       Training Coordinator I - February 2019

      e.       Curriculum Coordinator - April 2019

      f.       Training Coordinator I - May 2019

20.       Despite being qualified for each position she applied for, ISP refused to hire Ms. Dye for any of the positions. In fact, Ms. Dye was the most qualified and she had some of the highest test scores for the positions for which she applied.

21.       Although these are entry level positions, they would have been a promotion for Ms. Dye as they paid more per hour and, even more importantly, would have made her eligible to again participate in the more favorable PERSI retirement system available to law enforcement personnel. These positions would have also had a day time schedule that would have allowed her to spend more time with her family.

22.       Nonetheless, POST refused to select Ms. Dye for any of the positions she applied for in 2017, 2018, and 2019. Most of these positions were offered to equal or lesser qualified male candidates.

23.       In January of 2018, Ms. Dye raised her concerns with Human Resources and John Morton, the Training Academy Manager, about why she was not hired for the Training Coordinator position. Ms. Dye was told that it was because she lacked supervisory experience, however such experience was not required for the job as it was an entry level position. During the meeting Mr. Morton was condescending towards Ms. Dye and refused explain what skill or experience she could acquire that would make her qualified for the position.

**COMPLAINT AND DEMAND FOR JURY TRIAL  -  4**

24. ISP then attempted to disqualify Ms. Dye from applying from any other similar positions by attempting to write her up based on false allegations that she said negative things about her boss. ISP also failed to place Ms. Dye's comments contesting the allegations in her file. Ultimately the effort to disqualify Ms. Dye was unsuccessful. ISP told Ms. Dye that the write up wasn't disciplinary, and did not mention it during Ms. Dye's annual performance evaluation last year.

25. Around May or June 2018, Ms. Dye requested a meeting with ISP Colonel Ked Wills (the head of ISP) to discuss why she was not being hired. She described to him how she had tested and interviewed for two positions, and that POST refused to hire her despite her qualifications. Colonel Wills ensured her there was no reason and blamed it on "new managers."

26. In September of 2018, POST again advertised for a Training Coordinator I position. Ms. Dye again applied and scored a 95% on the written test, which based on information and belief, was again either the highest or one of the highest scores of all the applicants.

27. However, after taking the test, Ms. Dye learned that POST had already conducted interviews for the position and wasn't going to even interview her.

28. Ms. Dye then contacted HR and asked why she wasn't going to be interviewed. HR told her that Morton had decided not to interview her.

29. Upon information and belief, it is alleged that by refusing to interview her, POST and Mr. Morton not only discriminated against Ms. Dye, but also violated ISP policy which requires that all qualified individuals who score well on the initial test and are qualified must be interviewed.

30. POST then offered the position to two less qualified male applicants

31.     POST then offered the Training Coordinator I position to a second male applicant. On information and believe it is alleged that he was also unable to pass the polygraph test and was disqualified.

32.     In January of 2019, POST sent Ms. Dye an annual form which asked her to attest that she had not been discriminated against.  Ms. Dye filled out the form truthfully stating that she believed she had been discriminated in the hiring process for the Coordinator positions.

33.     After Dye complained of gender discrimination in January 2019, ISP continued to discriminate and retaliate against Ms. Dye by her application for Training Coordinator I position in February, 2019, The Curriculum Coordinator I position in April 2019, and the Training Coordinator I Position in May 2019.

34.      Despite her numerous requests, Ms. Dye was denied permission to attend the supervisor training. Ms. Dye was also denied training in radio procedures despite her request. ISP retaliated against Ms. Dye by placing her a night shift, despite her being scheduled for day shift, and allowed a male employee with less seniority to remain on day shift.

35.     ISP continued to retaliate against Ms. Dye in April of 2020 by informing her that her ADA reasonable accommodation request was insufficient and changing the essential function of her job to make it seem as though she could not perform an essential function of her job.

36.     As a result of Defendants' actions and inactions, Ms. Dye suffered severe emotional distress including depression, anxiety, loss of appetite, and inability to sleep.

## COUNT ONE

### GENDER DISCRIMINATION/ SEXUAL HARASSMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 42 U.S.C. 2000(e) *ET SEQ*. AS AMENDED

1.     Ms. Dye incorporates herein by reference all the foregoing and following allegations of the Complaint.

**COMPLAINT AND DEMAND FOR JURY TRIAL  -  6**

2. Under the provisions of Title VII of the Civil Rights Act of 1964, Ms. Dye is a covered employee, an ISP is an employer with over fifteen employees, is a covered entity.

3. ISP, through the acts of the above-mentioned individuals throughout Ms. Dye's employment, discriminated against because of her gender.

4. The wrongful treatment concerning Ms. Dye's terms and conditions of employment by ISP violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000€, *et seq.*, and constituted gender discrimination.

5. ISP committed the acts alleged, or failed to act as reasonably required, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Ms. Dye from an improper and evil motive amounting to malice, and in conscious disregard of Ms. Dye's rights. Ms. Dye may thus recover punitive damages from ISP in amount to be proven at trial.

6. Ms. Dye is entitled to recover damages, including back and front pay and lost benefits, compensatory and punitive damages, and attorney fees because of ISP's discriminatory conduct.

7. Ms. Dye is further entitled to recover attorney fees and costs incurred in prosecuting this action pursuant to Title VII of the Civil Rights Act of 1964 and the Idaho Human Rights Act.

## COUNT TWO

## RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 42 U.S.C. 2000(e) *ET SEQ*. AS AMENDED

8. Ms. Dye incorporates herein by reference all the foregoing and following allegations of the Complaint.

9. Ms. Dye reported her discriminatory treatment several times to her supervisors at ISP. Ms. Dye was subjected to condescension, adverse or unfavorable changes to the terms and

conditions of her job, and repeatedly and intentionally overlooked for positions she applied.

10. Ms. Dye engaged in protected activity by reporting her discrimination to her supervisors, human resources, and the Idaho Human Rights Commission.

11. ISP wrongfully retaliated against Ms. Dye for engaging in protected activity violation of Title VII of the Civil Rights Act of 1964.

12. ISP created a hostile working environment by taking such discriminatory and retaliatory actions against Ms. Dye referenced above.

13. ISP wrongfully retaliated against Ms. Dye by taking adverse employment action against her for engaging in protected activity.

14. ISP committed the acts alleged, or failed to act as reasonably required, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Ms. Dye from an improper and evil motive amounting to malice, and in conscious disregard of Ms. Dye's rights. Ms. Dye may thus recover punitive damages from Defendants in amounts to be proven at trial.

## CLAIM FOR ATTORNEY FEES

1. Plaintiff has been required to retain the services of Johnson & Monteleone, L.L.P. to prosecute this action and is thus entitled to recover reasonable attorney fees in accordance with Idaho Code and/or other provisions of law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against Defendant as follows:

1. For Plaintiff's special and general damages in amounts which may be proven at trial;
2. For costs of suit incurred herein;
3. For reasonable attorney fees to be determined by the Court; and
4. For such other relief as the Court deems just and proper.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 8**

DATED:  This  28th  day of July, 2020.

JOHNSON & MONTELEONE, L.L.P.

_____
Shawnee S. Perdue
Attorneys for Plaintiff

## **DEMAND FOR JURY TRIAL**

Pursuant to I.R.C.P. 38(b), Plaintiff hereby demands a trial by jury on any and all issues properly triable by jury in this action.

DATED: This  28th  day of July, 2020.

JOHNSON & MONTELEONE, L.L.P.

_____
Shawnee S. Perdue
Attorneys for Plaintiff

**COMPLAINT AND DEMAND FOR JURY TRIAL  -  10**